UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

BRAD LEE HUBBARD,                    )
                                     )
        *Plaintiff*,                 )
                                     )
v.                                   )         No. 2:20-cv-00206-SKL
                                     )
COMMISSIONER OF SOCIAL SECURITY,     )
                                     )
        *Defendant*.                 )

## MEMORANDUM AND ORDER

Plaintiff Brad Hubbard ("Plaintiff"), acting pro se, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying him disability insurance benefits ("DIB"). Each party has moved for judgment [Doc. 23 & Doc. 24] and filed supporting briefs [Doc. 23 & Doc. 25]. For the reasons stated below: (1) Plaintiff's motion for summary judgment [Doc. 23] will be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 24] will be **GRANTED**; and (3) the decision of the Commissioner will be **AFFIRMED**.

## I.    ADMINISTRATIVE PROCEEDINGS

According to the administrative record [Doc. 17 ("Tr.")], Plaintiff filed his application for DIB on April 3, 2017, alleging disability beginning December 23, 2016. Plaintiff's claim was denied initially and on reconsideration at the agency level. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on August 8, 2019, in Kingsport, Tennessee. On August 30, 2019, the ALJ found Plaintiff was not under a disability as defined in the Social Security Act at any time from the alleged onset date through the date of the ALJ's decision.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action.

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born April 11, 1977, making him 40 years old on the date he was last insured for disability purposes. A 40-year-old person is considered a "younger person." 20 C.F.R. § 404.1563(c). He has at least a high school education and is able to communicate in English. He has past relevant work as a composite farm manager and hay farmer, and as a heavy equipment construction worker. According to the Dictionary of Occupational Titles ("DOT"), both of these jobs are considered skilled and are typically performed at the medium exertional level, although Plaintiff performed them at the heavy exertional level. He also has past relevant work as a bulldozer operator. The DOT classifies this job as skilled with a heavy exertional level, which is how Plaintiff performed it.

### B. Medical Records

In his Disability Report, Plaintiff alleged disability due to "Broke both leg bones in right ankle 1997," "Major head, neck, and back trauma car wreck 2007," "Right should don't know word for it 2014," and "Left leg femur trauma 2017." (Tr. 98). While there is no need to summarize the medical records herein, the relevant records have been reviewed.

### C. Hearing Testimony

At the hearing before the ALJ on August 8, 2019, Plaintiff and a vocational expert ("VE") testified. Plaintiff was represented by counsel at the hearing, although he represents himself before this Court. The Court has carefully reviewed the transcript of the hearing (Tr. 35-67).

2

## III.    ELIGIBILITY AND THE ALJ'S FINDINGS

### A.    Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)).  A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)).  The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process.  20 C.F.R. § 404.1520(a)(4)(i-v).  The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

3

> 5) If the claimant can make an adjustment to other work, the claimant
> is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

**B.      The ALJ's Findings**

The ALJ found Plaintiff met the insured status requirements through December 31, 2017. At step one of the five-step process, the ALJ found Plaintiff did not engage in substantial gainful activity during the time period between his alleged onset of disability date (December 23, 2016) and the date he was last insured for disability purposes (December 31, 2017).

At step two, the ALJ found Plaintiff had the following severe impairments: (1) residuals of a left lower extremity fracture and right ankle fracture, (2) degenerative disc disease, (3) history of closed head injury, referring to a traumatic brain injury ("TBI") Plaintiff sustained in 2006 (4) right shoulder disorder, (5) anxiety, and (6) alcohol abuse.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. In so finding, the ALJ considered the four broad areas of mental functioning, referred to as the "paragraph B" criteria, which are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. The ALJ found Plaintiff had moderate limitations in all four areas.

4

Next, the ALJ found that, during the relevant period, Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following additional restrictions:

- He is able to stand and walk for a total of three hours per eight-hour workday.

- He is able to push and pull occasionally with his bilateral lower extremities.

- He should avoid crawling and climbing ladders and ropes.

- He can occasionally climb ramps and stairs.

- He can occasionally balance, stoop, kneel, and crouch.

- He can frequently reach overhead with his upper right extremity.

- He can occasionally tolerate exposure to temperature extremes, vibrations, and hazards.

- He is able to perform work in a moderately quiet (noise level 3) environment.

- He is able to understand, remember, and carry out simple instructions.

- He is able to sustain concentration and persistence on simple tasks for two-hour periods throughout an eight-hour workday.

- He is able to have occasional interaction with the public, coworkers, and supervisors, and he is able to adapt to occasional changes in the work setting.

(Tr. 21).

At step four, the ALJ found Plaintiff was unable to perform his past relevant work during the relevant period. At step five, however, the ALJ found that Plaintiff was capable of performing

5

other types of work with jobs existing in substantial numbers in the national economy, including as a "document preparer," a "tube operator mail sorter," and an "addresser." (Tr. 28).

The above findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act during the relevant time period.

## IV. ANALYSIS

Plaintiff asserts this matter should be reversed for an award of benefits, or in the alternative reversed and remanded for further administrative proceedings. Plaintiff asserts a number of errors with the ALJ's decision. As the Court interprets his brief, Plaintiff contends the ALJ erred by: (1) failing to consider the severe effects of his TBI and failing to consider certain medical records; (2) placing too much emphasis on Plaintiff's failure to seek out treatment; (3) improperly considering his activities of daily living; (4) failing to consider the side effects of Plaintiff's medications; (5) failing to properly weigh the medical opinion evidence from Dr. Derek Hopko (psychological consultative examiner), Dr. Judy Millington (treating psychologist), and Dr. Alan Colyar (treating physician); and (6) failing to properly evaluate whether Plaintiff's impairments qualify him for disability because they meet or equal one of the listings in Appendix 1 to Subpart P of the regulations.[1] Plaintiff contends he qualifies under Listings 1.02 1.04, 11.04, 11.18, 12.02 (paragraphs A and B), and 12.11.

---

[1] The Commissioner essentially identified these as the issues Plaintiff raises [*see* Doc. 25 at Page ID # 967, 971-972]. To the extent Plaintiff intended to raise any other issues, the Court finds they are insufficiently developed, and will not be addressed further herein. *McGrew v. Duncan,* 937 F.3d 664, 669 (6th Cir. 2019) ("A party may not present a skeletal argument, leaving the court to put flesh on its bones." (quoting *Ruffin v. Cuyahoga Cnty.*, 708 F. App'x 276, 278 (6th Cir. 2018) (quotation marks omitted)).

6

The Court will address Plaintiff's listings arguments first (number (6)). The Court will then address Plaintiff's arguments concerning the medical opinion evidence (number (5)). The remaining arguments all generally relate to the ALJ's assessment of Plaintiff's RFC (numbers (1), (2), (3), and (4)), which the Court will address last.

### A.    Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The United States Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also McClanahan*, 474 F.3d at 833. Furthermore, the evidence must be "substantial" in light of the record as a whole, "taking into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative

7

decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

## A. LISTINGS

Plaintiff has the burden of proving that his impairments meet or medically equal the criteria of a given listing by pointing to specific medical findings that satisfy all of the criteria of the listing. *Wredt ex rel. E.E. v. Colvin*, No. 4:12-cv-77, 2014 WL 281307, at *5 (E.D. Tenn. Jan. 23, 2014) (citations omitted). Plaintiff cannot satisfy the listing unless he can prove all of the criteria are present. *Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987) (citation omitted); *see also Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004) (citation omitted) (A claimant "must present specific medical findings that satisfy the various tests listed in

8

the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency."). "An impairment that manifests only some of [the] criteria, no matter how severely, does not qualify." *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (citations omitted).

Further, "[b]ecause satisfying the listings yields an automatic determination of disability . . . the evidentiary standards [at step three] . . . are more strenuous than for claims that proceed through the entire five-step evaluation." *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x. 533, 539 (6th Cir. 2014) (citations omitted). Finally, "[b]ecause abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00(D).

The Commissioner succinctly and correctly states the reasons why Plaintiff's impairments do not meet or equal the requirements of Listings 1.02 1.04, 11.04, 11.18, 12.02, and 12.11 [Doc. 25 at Page ID # 974-75]. Plaintiff does not meet the requirements of Listings 1.02 and 1.04(c), because he failed to establish that he is unable to ambulate effectively, which is a requirement of those Listings. Ineffective ambulation means "generally . . . having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00B(2)(B) (2019). Plaintiff walked with a "mild limp," and showed "mild balance difficulty" in walking during his August 2017 physical consultative exam (Tr. 685). On December 15, 2017, Plaintiff reported to Dr. Millington that he had been raking limbs in his yard that day, which hardly indicates the need for a two-handed assistive device. More importantly, Plaintiff does not cite to any evidence in the record showing he has such a need.

9

Plaintiff does not meet the requirements of Listings 1.04(a) and (b), because he does not have evidence of a compromised nerve root; also, the record does not reflect he has been diagnosed with spinal arachnoiditis. Plaintiff does not meet the requirements of Listing 11.04 because there is no proof in the record that he has ever suffered from a "Vascular insult to the brain," often referred to as a stroke, which "brain cell death caused by an interruption of blood flow within or leading to the brain, or by a hemorrhage from a ruptured blood vessel or aneurysm in the brain." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.00I(1) (version enacted in 2018, effective throughout 2019).

Listing 11.18 is for TBI. The Commissioner points out the actual event causing Plaintiff's TBI occurred in 2006, which is well-outside the relevant time period. Indeed, Plaintiff does not claim to have become disabled until 2016. Furthermore, the record does not reflect Plaintiff had "extreme" limitations in his ability to stand up, balance while standing or walking, or use his upper extremities (§ 11.18A), nor does the record reflect a marked limitation in physical functioning or in one of the four areas of mental functioning, both of which are required (§ 11.18B). Plaintiff cites reports from psychological consultative examiner Dr. Derek R. Hopko and treating psychologist Dr. Judy Millington, neither of which addresses any physical limitations. Dr. Hopko found Plaintiff was moderately impaired in some areas of mental functioning and moderately to markedly impaired in others. Dr. Millington found Plaintiff had a "Poor" ability to perform some specific tasks within each of the four areas of mental functioning, but overall she marked more tasks as "Fair" and "Good" than "Poor." (Tr. 810-11). The ALJ credited the less extreme limitations from these doctors' reports, noting that "Dr. Hopko's opinion appears to overstate the claimant's limitations" (Tr. 26), and that "Dr. Millington's opinions regarding Plaintiff's ability to

socially interact were inconsistent with her own examination findings (Tr. 25).[2]  The ALJ further discussed a number of normal findings regarding Plaintiff's mental functioning, which Plaintiff does not address (Tr. 24).

Similarly, Plaintiff does not meet the requirements of Listing 12.11 (neurodevelopmental disorders) or 12.02 (neurocognitive disorders)[3] because the ALJ found Plaintiff did not demonstrate a marked limitation in two of the four areas of mental functioning or an extreme limitation in one of the four areas.

Plaintiff has failed to establish that he meets or medically equals the requirements of any of the Listings he identifies, or any others in the Listing of Impairments found in Appendix 1 to Subpart P of the regulations.  The ALJ adequately articulated his reasoning for determining that Plaintiff did not meet or medically the Listings Plaintiff identifies.  Plaintiff's motion is denied in this regard.

**B.      MEDICAL OPINION EVIDENCE**

Plaintiff argues the ALJ committed reversible error when evaluating the opinions of Dr. Hopko (psychological consultative examiner), Dr. Millington (treating psychologist), and Dr. Alan Colyar (primary care physician).

Plaintiff filed his application for benefits on April 3, 2017 (Tr. 16).  Accordingly, as the Commissioner points out, the applicable regulation is 20 C.F.R. § 404.1520c ("How we consider

---

[2] The Court will address Plaintiff's arguments regarding the ALJ's assessment of these opinions in greater detail below.  For now, the Court notes Plaintiff failed to show any harmful error with the ALJ's assessment of the medical opinion evidence or the paragraph B criteria.

[3] Plaintiff relies only on paragraphs A and B of Listing 12.02 [Doc. 23 at Page ID # 944].

11

and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017). Subsection (a) of that regulation provides:

> (a) How we consider medical opinions and prior administrative medical findings. We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 404.1520c(a).

In addition to supportability and consistency, the ALJ is required to consider the source's relationship with the claimant, including the length, frequency, purpose, and extent of the treating relationship, if any; the source's specialization, and other factors, such as the source's familiarity with other evidence in the record and whether the source understands the SSA's policies and evidentiary requirements. *Id.* § 1520c(c). The ALJ is required to explain how they considered supportability and consistency factors, but not the remaining factors. *Id.* § 1520c(b)(2).

If a source offers multiple opinions, the ALJ is not required to articulate their assessment of every single medical opinion; rather, they can articulate how they considered all of that source's opinions "in a single analysis." *Id.* § 1520c(b)(1).

### 1. Dr. Hopko

Regarding Dr. Hopko's opinion, the ALJ wrote:

12

The undersigned also considered the opinion of psychological consultative evaluator Derek Hopko [Ph.D., H.S.P.], who opined that the claimant showed evidence of a moderate to marked impairment in short-term memory and a moderate impairment in his long-term and remote memory functioning (Exhibit 15F). Dr. Hopko further opined that the claimant showed evidence of a moderate to marked impairment in his ability to sustain concentration (Id.). Finally, Dr. Hopko opined that the claimant showed evidence of a moderate impairment in social relating and a moderate to marked impairment in his ability to adapt to change (Id.). The undersigned finds the opinion of Dr. Hopko to be unpersuasive. Dr. Hopko's opinion that the claimant has a moderate to marked impairment in his ability to sustain concentration is unsupported by his own observation that the claimant was able to perform serial three subtractions successfully and spell world correctly forward and backward (Id.). In addition, that opinion is inconsistent with the observations of Dr. [Millington], who felt his attention and concentration were appropriate based on the claimant's performance during a mental status examination that she conducted. Based on his observations from evaluating the claimant, including the claimant's reported alcohol consumption prior to the evaluation, and the evidence as a whole, Dr. Hopko's opinion appears to overstate the claimant's limitations.

(Tr. 26).

Plaintiff argues the ALJ committed reversible error in his analysis of Dr. Hopko's opinion because Dr. Hopko specializes in psychology, and because his opinion was consistent with Dr. Millington's and was otherwise supported in the record. Plaintiff criticizes the ALJ's reliance on Plaintiff's ability to "do simple mathematics and his performance on the serial sevens test." [Doc. 23 at Page ID # 941].

The ALJ did not explicitly articulate his consideration of Dr. Hopko's specialty in psychology, but he was not required to. *See* 20 C.F.R. § 404.1520c(b)(2). The ALJ was only *required* to discuss the supportability of Dr. Hopko's opinion and its consistency with other evidence in the record, which the ALJ plainly did. Plaintiff's criticism of the ALJ's reliance on

13

the serial subtraction test is without merit, as the test is meant to measure concentration and attention. *See, e.g., Gilbert v. Comm'r of Soc. Sec.*, No. 1:18-cv-653, 2020 WL 1129613, at *6 (S.D. Ohio Mar. 9, 2020) ("successful performance of serial sevens and serial threes (evidencing intact attention and concentration)"), *report and recommendation adopted*, 2020 WL 1643419 (S.D. Ohio Apr. 2, 2020). Moreover, even if Dr. Hopko's opinion was somewhat consistent with Dr. Millington's, the ALJ correctly observed that Dr. Millington's treatment notes reflect normal attention and concentration during the two mental status examinations she performed in the record (Tr. 712, 815), which are separate from the opinion she offered for Plaintiff's disability claim. Plaintiff does not challenge the ALJ's reliance on Plaintiff's alcohol consumption—seven beers— before the consultative exam which took place at 12:30 p.m., and the Court finds that is an appropriate "other reason" for not fully crediting Dr. Hopko's assessment.

Finally, the Court notes that the ALJ found Plaintiff was moderately limited in all four areas of mental functioning, similar to Dr. Hopko's findings regarding Plaintiff's long-term memory and ability to relate socially, and similar to the higher end of functioning Dr. Hopko assessed regarding Plaintiff's ability to sustain concentration and adapt to change (Tr. 676). This is consistent with the definition of RFC, which *the most* a claimant can do, not the least. 20 C.F.R. § 404.1545. The mental RFC and Dr. Hopko's least restrictive findings are also consistent with the findings of the state agency psychologists who reviewed Plaintiff's file. The ALJ noted that he found their opinions "persuasive," and "consistent with the overall evidence." (Tr. 25).

Accordingly, the Court finds Plaintiff has failed to show any harmful error with the ALJ's consideration of Dr. Hopko's opinion.

14

### 2. Dr. Millington

Regarding Dr. Millington's opinion, the ALJ wrote:

> The undersigned considered the opinion of the claimant's mental health provider, Jury Millington, Ph.D., who opined that the claimant has a good ability to function independently; a fair ability to follow work rules, relate to co-workers, interact with co-workers, and to maintain attention and concentration; and a poor ability to deal with the public, use judgment, or deal with work stresses (Exhibit 25F). She further opined that the claimant has a fair ability to understand, remember, and carry out simple and detailed, but not complex job instructions (Id.). Dr. Milligan opined that the claimant has a fair ability to maintain personal appearance, a fair to poor ability to relate predictably in social situations, and a poor ability to behave in an emotionally stable manner or demonstrate reliability (Id.). The undersigned finds the opinion of Dr. [Millington] somewhat persuasive, as much of her opinion is consistent with the medical evidence of record. However, her opinions regarding the claimant's ability to interact socially are not supported by her own observations that the claimant was alert, oriented, and cooperative, indicating that he is not as limited as she opined (Exhibit 19F).

(Tr. 25-26). Earlier in the opinion, the ALJ also noted that the "evidence indicates that the claimant continued to treat with Dr. Millington for the remainder of the relevant period." (Tr. 23).

Plaintiff argues the ALJ committed reversible error when he did not fully credit Dr. Millington's opinion. He argues her opinion should be given greater consideration because of her specialization and the nature and frequency of his treatment relationship with her. He also suggests the ALJ did not properly consider consistency and supportability.

Again, the ALJ was not required to articulate his consideration of Dr. Millington's relationship with Plaintiff, her specialization, or any other factors. Nevertheless, the ALJ did observe that Dr. Millington was a treating provider. He also articulated his consideration of the supportability and consistency factors as required by the applicable regulations. He specifically noted that much of her opinion is consistent with the medical record, and therefore with the ALJ's

15

assessment of Plaintiff's RFC. Indeed, as mentioned, the ALJ found Plaintiff had moderate limitations in each of the four areas of mental functioning. This is consistent with Dr. Millington's findings that Plaintiff had a "fair" or "good" ability to perform many mental tasks, including following work rules, relating to co-workers, interacting with supervisors, functioning independently, maintaining attention and concentration, and understanding and carrying out detailed and simple instructions (Tr. 810-11). A "moderate limitation" is defined in the Listing of Impairments as: "Your functioning in this area independently, appropriately, effectively, and on a sustained basis is **fair**." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00F(2) (emphasis added).

The areas where Dr. Millington found Plaintiff had only a poor ability to function were dealing with the public, using judgment, dealing with work stresses, carrying out complex instructions, behaving in an emotionally stable manner, and demonstrating reliability (Tr. 810-11). Dr. Millington also found Plaintiff had a fair to poor ability to relate predictably in social situations (Tr. 811). The ALJ limited Plaintiff to simple tasks and only occasional changes in the work environment to partially accommodate some of these limitations. The ALJ also limited Plaintiff to only occasional interactions with the public, coworkers, and supervisors, and a moderately quiet work environment (Tr. 21). The ALJ found any greater social limitations opined to by Dr. Millington were not supported by her finding that Plaintiff was alert, oriented, and cooperative during his appointments with her. Moreover, elsewhere in the decision, the ALJ reasoned:

> Despite his reported difficulty getting along with others, he stated that he attends church and shops in stores, and providers described the claimant as pleasant and cooperative (Exhibit 18F, p. 1; Exhibit 19F p. 3; Exhibit 24F p.3). Therefore, he is able to have occasional interaction with the public, coworkers, and supervisors. Finally, although he reported that stressful situations cause anxiety, his mental provider noted that his impulses were generally appropriately controlled, and his insight was average (Exhibit 25F

16

> p. 6).  Accordingly, he is able to adapt to occasional changes in the
> work setting.

(Tr. 24-25).  Also, as mentioned above, the ALJ credited the opinions of the state agency psychologists.

In these discussions, the ALJ clearly described why he found Dr. Millington's opinion regarding Plaintiff's ability to socially interact was not supported, and he identified evidence which he found to be inconsistent with the related limitations Dr. Millington assessed.  Plaintiff fails to demonstrate why the ALJ's interpretation of this evidence is unreasonable or outside of the ALJ's "zone of choice."  Accordingly, the Court finds no error with the ALJ's decision to assign only partial credit to Dr. Millington's opinion.  Moreover, as the foregoing discussion shows, the Court finds the ALJ's overall assessment of the paragraph B criteria and Plaintiff's mental RFC to be adequately supported.  Plaintiff's motion will be denied on these issues.

### 3.    Dr. Colyar

Regarding Dr. Colyar, Plaintiff's primary care physician, the ALJ wrote:

> The undersigned also considered the opinion of Dr. Allan Colyar, M.D., who opined that the claimant is unable to engage in work at any exertional level (Exhibit 26F).  Dr. Colyar's opinion is in the form of checked boxes without any explanatory support for his opinion.  In addition, the evidence indicates that the claimant established care with Dr. Colyar as a new patient in October 2018, and the evidence does not indicate that the provider treated the claimant during the adjudicative period.  Moreover, Dr. Colyar's opinion is on an ultimate issue reserved for the Commissioner. Finally, Dr. Colyar's opinion is inconsistent with his own observations of normal gait and no deformities, masses, or tenderness and no known fractures, normal strength and tone and normal appearance of the upper and lower extremities (Id. p. 3).  As Dr. Colyar did not provide any support for his opinion, and his opinion is inconsistent with his own observations, as well as the overall evidence described above, the undersigned finds his opinion to be unpersuasive.

17

(Tr. 26).

Plaintiff suggests the ALJ erred in not crediting Dr. Colyar's opinion, arguing: "The A.L.J. disregarded any input from Dr. Colyar since the duration of treatment was not established and his report was in the form of checked boxes. The A.L.J. did not try to contact the treating physician to request additional evidence and/or clarification as requested by 20 C.F.R. § 404.1512(b)." [Doc. 23 at Page ID # 941].

Contrary to Plaintiff's argument, the ALJ did not discount Dr. Colyar's opinion simply because of the duration of treatment and the opinion's format. The ALJ also specifically noted the opinion was not supported by Dr. Colyar's own observations and other evidence in the record. The other evidence includes, for example, the opinion of the physical consultative examiner, the opinions of the state agency physicians who reviewed Plaintiff's file, and Plaintiff's own Function Report indicating he can lift 20 pounds, among other records. The ALJ also noted the opinion was not supported, particularly because Dr. Colyar's own treatment records indicated Plaintiff had normal strength and muscle tone in all four of his extremities, as well as a normal gait (Tr. 26). The ALJ appropriately characterizes this evidence, and the Court finds it supports the ALJ's assessment of Dr. Colyar's opinion. Accordingly, the ALJ addressed the two most important factors in weighing medical opinion evidence—consistency and supportability.

Further, the Court is not persuaded by Plaintiff's argument that the ALJ erred by not contacting Dr. Colyar to ask for clarification or to request additional evidence. As the Sixth Circuit has explained, "[i]t is true that an ALJ may contact a medical source for further clarification when the record contains insufficient evidence for the ALJ to make a determination as to whether the claimant is disabled." *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 123 (6th Cir. 2016)

18

(citing 20 C.F.R. § 404.1520b(c)(1)). In this case, the ALJ's thorough opinion demonstrates that he considered the entire record before he determined that there was sufficient evidence to conclude that Plaintiff did qualify as disabled. The ALJ's decision not to contact Dr. Colyar was therefore not an abuse of discretion. *See Dooley*, 656 F. App'x at 123.

Furthermore, in general, an ALJ has "discretion to determine whether further evidence . . . is necessary." *Foster*, 279 F.3d at 355 (citing 20 C.F.R. §§ 404.1517; 416.917) (other citation omitted). In this case, Plaintiff was represented by counsel at least through the administrative process. Accordingly, the ALJ did not violate a special duty to develop the record. *See Culp v. Comm'r of Soc. Sec.*, 529 F. App'x 750, 751, 2013 WL 3455483 (6th Cir. July 10, 2013) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986)) (per curiam). Rather, Plaintiff had "the burden of proving the existence and severity of limitations caused by her impairments." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (citation omitted).

The Court finds no error with the ALJ's decision not to credit Dr. Colyar's opinion. Plaintiff's motion will be denied in this regard.

## C.   RFC

Plaintiff's remaining arguments all generally have to do with the ALJ's assessment of Plaintiff's RFC. A claimant's RFC is the most the claimant can do despite his or her impairments. 20 C.F.R. § 404.1545(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). Moreover, "[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other."

19

*Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (citation omitted). An ALJ is responsible for determining a claimant's RFC after reviewing all of the relevant evidence in the record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). Further, a plaintiff has the burden of showing the severity of his conditions and their limiting effect on his ability to perform work functions. *See Watters v. Comm'r of Soc. Sec.*, 530 F. App'x 419, 425 (6th Cir. 2013) ("[T]his court has consistently affirmed that the claimant bears the burden of producing sufficient evidence to show the existence of a disability." (citing *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012)) (other citation omitted)).

Plaintiff argues the ALJ failed to consider certain pieces of evidence which, he believes, show that he is entitled to an award of benefits. Relatedly, Plaintiff argues:

> The traumatic brain injury . . . and fractures to the C3, C5, C6 and C7 vertebrae left [Plaintiff] with a long list of physical and mental complications that have affected his everyday life. Physically, [Plaintiff] suffers from motor skill deficits that cause difficulty controlling movement of extremities. These deficits affect the ability to independently initiate, sustain, or complete work related and everyday motor activities. The trauma to Mr. Hubbard's left frontal temporal lobe impacts controlling behavior, regulating emotions, adapting to change, and social interaction. Addictive tendencies are also affected. Exhibit 5F page 13[.] The Pain Medicine Associates acknowledge Mr. Hubbard's chronic pain. "The pain interferes with daily living, sleep patterns and cycles, decreased social activities, and decreased family interactions. There is increase in feelings of depression, irritability, and anger. The pain usually increases with sitting, standing, walking, bending, and twisting." The Pain Medicine Associates document some specific areas of pain in Exhibit 5F page 14. "Cervical degenerative disc disease radiates pain through the shoulders. There is thoracic spine pain noted as well. The conclusion is Mr. Hubbard suffers from chronic pain syndrome that cannot be resolved."

[Doc. 23 at Page ID # 932-33].

Plaintiff lists a number of his diagnoses and defines those conditions in his brief, contending, "[t]hese are all proven impairments that are proven by medical imaging and not just a matter of opinion." [Doc. 23 at Page ID # 936]. But disability is "determined by the functional limitations imposed by a condition, not the mere diagnosis of it." *Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 589 (6th Cir. 2019) (quoting *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014)) (further stating that "[n]one of Dyson's records shed light on his level of impairment during that relevant time. And the evidentiary burden is Dyson's to carry."). For example, the pages Plaintiff references from Exhibit 5F, which dates from 2014, indicate that while Plaintiff had previously sustained injuries to his cervical spine, those had healed. And, while he experienced some pain, he had a normal grip and normal reflexes, he was able to rise from seated to standing without difficulty, he had a normal tandem gate and a full range of motion, and he had no tenderness to many parts of his spine and other joints, intact sensation, negative straight leg raises, and "adequate bulk." (Tr. 423).

Plaintiff also argues the ALJ failed to properly consider Exhibit 1F, pages 13-16; Exhibit 13F page 36; Exhibit 21F, pages 1, 2, 4, 5, 9, 10, 13, and 14; and Exhibit 23F, pages 2 and 7 [Doc. 23 at Page ID # 938]. Pages 13-16 of Exhibit 1F reflect the results of a 2008 CT scan on Plaintiff's skull, and the results of a 2006 imaging study of his cervical spine. The CT scan results appear unremarkable, and more importantly, the ALJ did discuss the results of a 2017 CT scan of Plaintiff's skull, which, as the ALJ noted, "showed stable minor postoperative findings status post left frontal-temporoparietal craniotomy and no acute findings." (Tr. 22-23). As Plaintiff does not allege he became disabled until December 23, 2016, plainly it was reasonable for the ALJ to focus more closely on the more recent CT scan. Moreover, it is widely recognized that the ALJ need

not discuss every piece of evidence in the record so long as substantial evidence supports his opinion, and a failure to discuss the 2008 CT scan (or any other evidence) "does not indicate that [it] was not considered." *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004). The ALJ was plainly aware of Plaintiff's car accident in 2006 and the resulting injuries.

The same is true for the 2006 CT scan of Plaintiff's cervical spine. While the ALJ did not explicitly discuss this particular imaging study from 2006, the ALJ did discuss in detail the results of a cervical spine CT scan from 2017, mentioning in particular that the comparison date was an earlier CT scan from 2014 (Tr. 23). The ALJ also noted the 2017 CT scan "showed development of **minimally perceptible** retrolisthesis at C4-5 since 2014" (Tr. 23 (emphasis added)). The 2017 CT scan of the cervical spine is on page 36 of Exhibit 13F. Contrary to Plaintiff's argument, the ALJ specifically considered this evidence in assessing Plaintiff's RFC.

Exhibit 21F contains records related to Plaintiff's 2006 car accident, when he sustained the TBI and other injuries. The ALJ acknowledged Plaintiff's car accident and the fact that Plaintiff experienced a closed head injury and a shoulder injury as a result (Tr. 22). These records clearly do not reflect Plaintiff's functional capacity during the adjudicative period, from December 2016 through December 2017. For one, the CT scans indicate Plaintiff's skull and parts of his cervical spine were fractured, as they were taken shortly after the accident (Tr. 730). The Court finds no error in the ALJ's decision not to explicitly discuss these records in his decision.

Exhibit 23F contains records relating to an incident in January 2017, when Plaintiff fell off some scaffolding—while working on the roof of a building—and broke his left hip. The ALJ did discuss the imaging studies found on pages 2 and 7 of Exhibit 23F—these are also found in Exhibit 13F (Tr. 22-23; 648-49; 640-41). Specifically regarding Plaintiff's hip fracture, the ALJ discussed

22

how Plaintiff "underwent surgery for his left hip fracture and was discharged to an inpatient rehabilitation facility." (Tr. 23). The ALJ then discussed how Plaintiff's four-week post-surgery follow-up visit was positive, noting that Plaintiff's orthopedic surgeon found Plaintiff was "healing well." (Tr. 23; 666). Although Plaintiff was experiencing some pain and "arthralgia," he had no muscle aches or weaknesses, and no swelling. He was released to "to begin weight bearing with a walker and instructed to follow up in four weeks." (Tr. 23).

As for the other issues Plaintiff lists in the above-quoted paragraph, the Court simply notes that each of these alleged limitations are addressed in the ALJ's lengthy RFC analysis, which the ALJ summarizes on pages 9 and 10 of his decision. The ALJ limited Plaintiff to only occasional pushing and pulling with his bilateral extremities. The ALJ did not similarly limit Plaintiff's upper extremities, noting that Plaintiff himself reported he was able to lift up to 20 pounds, and Dr. Blaine observed he had full grip strength. The ALJ did limit Plaintiff's overhead reaching with his right arm to accommodate Plaintiff's past shoulder injury. Due to Plaintiff's degenerative changes and his history of hip surgeries, the ALJ limited Plaintiff to walking and standing only three hours per workday, and assigned other significant postural limitations, noting that activities like crouching and stooping can exacerbate Plaintiff's pain. The ALJ limited Plaintiff's exposure to hazards due, in part, to side effects of Plaintiff's medications (Tr. 24), foreclosing Plaintiff's argument on this issue mentioned above.[4]

Mentally, and despite Plaintiff's protestation that "[t]here was no consideration of psychological . . . signs that were observed" [Doc. 23 at Page ID # 944], the ALJ limited Plaintiff

---

[4] The Court also notes Plaintiff testified that when he first began taking Oxycodone, it made him "sleepy," but it no longer causes him any side effects (Tr. 45).

23

to simple tasks performed in up to two-hour increments, only occasional interaction with other people, and only occasional changes in the workplace setting. Plaintiff fails to acknowledge that in assessing this extremely limited RFC, the ALJ specifically addressed Plaintiff's purported and documented psychological issues.

Two remaining issues raised by Plaintiff bear discussion. First, Plaintiff argues the "impairments were not given weight due to the lack of follow-up treatment in the time between the accident and December 31, 2017 (the date last insured)." [Doc. 23 at Page ID # 938]. Plaintiff contends "[i]t is wrong to discredit the severity of impairments because there is no history of treatment due to lack of funds or insurance." [*Id.*]. The ALJ actually noted there was "little treatment for these conditions during the adjudicative period" (Tr. 22), referring to the time period between Plaintiff's alleged onset date (December 23, 2016), and his date last insured (December 31, 2017). At least some evidence in the record indicates Plaintiff did have insurance during this time (Tr. 673), and appears to have had insurance dating back at least until June 10, 2014 (Tr. 422). Moreover, as the Commissioner points out, Plaintiff does not cite to any proof in the record indicating that he attempted to seek free or low-cost medical care during the times that he was not insured. *See Moore v. Comm'r of Soc. Sec.*, No. 14-1123-T, 2015 WL 1931425, at *3 (W.D. Tenn. Apr. 28, 2015) (citations omitted) (finding no error with ALJ's citation of claimant's lack of treatment as an adverse credibility factor).

Likewise, Plaintiff does not cite to any proof in the record that his mental limitations restricted his ability to obtain treatment for his impairments. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) ("For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself. But in this case there is no evidence in the record

explaining White's failure to seek treatment . . . . A 'reasonable mind' might . . . find that the lack of treatment . . . indicated an alleviation of White's symptoms."). Nor does he cite to any medical proof supporting his contention that his TBI "impaired [his] ability to understand the severity of his limitations." [Doc. 23 at Page ID # 946].

Finally, Plaintiff contends the ALJ placed undue emphasis on his ability to perform activities of daily living [Doc. 23 at Page ID # 940, 944]. The Court has already addressed evidence that supports the ALJ's determination of the extent of Plaintiff's mental limitations, in the discussion of the Listings and the ALJ's assessment of the medical opinion evidence. Certainly, it was not inappropriate for the ALJ to rely on Plaintiff's activities of daily living—in combination with this medical evidence—to assess Plaintiff's functional limitations. The ALJ is required to consider such evidence. *See* Social Security Ruling 96-8P, 1996 WL 374184, at \*5 (July 2, 1996) (stating RFC must be based on all relevant evidence including reports of daily activities). Contrary to Plaintiff's numerous arguments, the Court finds the ALJ's consideration of Plaintiff's activities of daily living is reasonable and appropriate, and well within the ALJ's zone of choice.

In sum, the Court concludes Plaintiff has not "persuasively shown that the ALJ erred in conducting [the] difficult task" of weighing the record evidence, as it pertains to Plaintiff's mental or physical RFC. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) (further holding "we see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence"); *accord DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (noting that "cherry picking" allegations are seldom successful because crediting them would require courts to re-weigh record evidence). Plaintiff cites some

25

evidence that he believes supports her claim of disability, but an ALJ's decision is "not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). The record demonstrates the ALJ incorporated into the RFC the functional limitations he found to be credible and supported by the record, and the ALJ's decision must therefore be affirmed.

## V. CONCLUSION

For the above reasons:

(1) Plaintiff's motion for summary judgment [Doc 23] is **DENIED**;

(2) the Commissioner's motion for summary judgment [Doc. 24] is **GRANTED**;

(3) the Commissioner's decision denying benefits is **AFFIRMED**; and

(4) A separate judgment shall enter.

**SO ORDERED.**

**ENTER**:

s/ *Susan K. Lee*

SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE